1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10 | TONY SMITH,

11 |                Plaintiff,

12 |     v.

13 | WASHINGTON DEPARTMENT OF
     CORRECTIONS et al.,

14

15 |               Defendants.

CASE NO. C11-5731 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR:

MARCH 29, 2013

16       The District Court has referred this 42 U.S.C. § 1983 civil rights action to the

17 undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local

18 Magistrate Judge Rules MJR 1, MJR 3, and MJR 4.

19       Defendants ask that the Court grant them summary judgment (ECF No. 17). The Court

20 recommends granting Defendants' motion. Plaintiff's allegation that he and other inmates cannot

21 have traditional foods at the end of Ramadan Feast should be dismissed without prejudice

22 because it was not exhausted through the prison grievance system. All other claims should be

23 dismissed with prejudice.

24

REPORT AND RECOMMENDATION - 1

1    Plaintiff contends that defendants have committed perjury in affidavits. The claim is

2 without merit given the evidence submitted by both parties and the chain of events. An affidavit

3 that was not correct was submitted in a Thurston County Superior Court case on August 9, 2010.

4 When that defendant, Jay Jackson, learned the information he had provided to the superior court

5 was not correct, he corrected the affidavit. Mr. Jackson corrected his affidavit on August 10,

6 2010 (ECF No. 20, Exhibit 1, ¶ 5).

7    Plaintiff fails to show that any named defendants intended to provide meals that did not

8 meet the nutritional needs of inmates fasting during Ramadan. In addition, plaintiff fails to show

9 that he did not get a proper amount of food for Ramadan. In 2010, Ramadan lasted from August

10 11through September 9 (ECF No. 17, page 2).

11                                    <u>FACTS</u>

12    Ramadan is a Muslim religious month that consists of fasting and prayer during daylight

13 hours, with meals after sunset and before sunrise. At the end of Ramadan, there is a traditional

14 feast called "Eid Ul Fitr." (ECF No. 19, page 12). Ramadan begins ten days earlier each year.

15 This is because the beginning of Ramadan is based on a lunar calendar and not the three hundred

16 and sixty-five day Christian calendar. In 2010, the first day of Ramadan was August 11, 2010

17 (ECF 17, Exhibit 2). In 2010 the Washington State Department of Corrections ("Department")

18 changed the manner in which it provided food to Muslim inmates who were fasting during

19 Ramadan.

20    Prior to 2010 inmates who were fasting for Ramadan were provided with one hot meal

21 after sunset, and sack meals that were to be eaten before sunrise. In 2010, the Department tried

22 giving the inmates a box meal with a day's worth of calories and the Department stopped

23

24

providing the hot meal (ECF No. 17, Exhibit 2). Plaintiff admits that in 2011 the Department returned to providing one hot meal and sack meals (ECF No. 19, page 1).

On August 10, 2010 the day before Ramadan began, prison officials learned that the box meals did not contain as many calories as they had thought. Therefore, extra food sacks were provided with the box meals. Defendants allege that by August 11th or 12th at the latest, the number of calories for the box meals with the extra food sacks was between 2698 and 2749 (ECF No. 17, Exhibit 1). The monetary and long term planning benefits of not providing the hot meal are set forth in defendants' motion for summary judgment (ECF No. 17, Exhibit 1 and 2). The Department alleges that there was a cost savings because of the overtime and labor involved with preparing, storing, and serving hot meals.

Prison officials argue that they will have to spend more money in overtime to keep kitchen staff available to provide a hot meal over the next several years, because the Ramadan month is now starting during summer hours when sunset is later in the day. Plaintiff contests defendants' assertion that it will cost more money, but they do not address the overtime issue as it relates to keeping a cook and serving hot meals, or the fact that food cannot be simply kept in a warmer for an extended amount of time (ECF No. 19, page 2).

Plaintiff contests defendants' assertion that the meals contained the proper amount of calories, but plaintiff provides no expert analysis of the food and his argument is unsupported. Plaintiff also attempts to raise the issue that persons who are not named as defendants confiscated or took some of the food (ECF No. 19, page 14). The issue of other persons allegedly taking part of the sack lunches was not part of the complaint. In addition, review of plaintiff's own exhibits shows that the staff was searching the meal bags for contraband and to prevent inmates from trading or strong-arming for food (ECF No. 19, attachment B, exhibit 2). Extra

1   food was taken from plaintiff on August 19, 2010 and plaintiff was placed in segregation after an

2   incident in his unit (ECF No. 19, Exhibit 2).

3         Because of improper planning prior to the start of Ramadan in 2010, the number of

4   calories in the box meals was lower than the original values that defendants' had planned. This

5   meant that defendant Jackson's August 9, 2010 affidavit submitted to the Thurston County

6   Superior Court was inaccurate. Plaintiff has attempted to depict this inaccuracy as "perjury"

7   (ECF No. 19, page 3). Plaintiff fails to come forward with any admissible evidence to show that

8   defendant Jackson knew the information he provided to the Superior Court was incorrect when

9   he provided the information. Mr. Jackson corrected his affidavit one day later, when he learned

10  of his error. Further, prison officials supplemented the box meals to provide sufficient calories

11  (ECF No. 17, Exhibit 1).

12         Plaintiff alleges that defendants violated his rights under the free exercise of religion

13  clause of the First Amendment, the due process and equal protection clauses of the Fourteenth

14  Amendment, and the cruel and unusual punishment clause of the Eighth Amendment.  Plaintiff

15  further alleges that defendants substantially burdened his religion under the Religious Land Use

16  and Institutionalized Persons Act ("RLUIPA"). Plaintiff alleges, without admissible evidence,

17  that his caloric intake was limited to between 1770 and 1830 calories a day, and that he was

18  deprived of the post-Ramadan "Eid Ul Fitr Feast." (ECF No. 5, page 3).

19         The named defendants are the Washington State Department of Corrections, the former

20  Secretary of the Department, Eldon Vail; the Superintendent of Clallam Bay Corrections Center,

21  Ron Fraker; Dietary Services Manager Brent Carney; Food Program Manager Jay A. Jackson;

22  and Food Manager IV Jamie Calley. Defendants raise seven arguments in their motion for

23  summary judgment:

24

1.      Plaintiff's RLUIPA claim is moot,

2.      Plaintiff cannot show a substantial burden of his right to practice religion.

3.      Plaintiff's Eighth Amendment claim fails.

4.      Plaintiff fails to state a Fourteenth Amendment claim.

5.      Lack of personal participation.

6.      The Department is not a "person" subject to suit pursuant to
        42 U.S.C. § 1983.

7.      Qualified immunity.

STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1985); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). When presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (*citing Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 158-59 (1970)). Conclusory, nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing facts." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

1  <u>DISCUSSION</u>

2  1.      RLUIPA.

3  A.      Damages.

4  Several district courts in the Ninth Circuit have held that RLUIPA does not allow for a

5  damage claim against an individual. *See, e.g., Florer v. Bales–Johnson*, 752 F. Supp.2d 1185,

6  1205–06 (W.D. Wash. 2010); *Shilling v. Crawford*, 536 F. Supp.2d 1227, 1234 (D. Nev. 2008);

7  *Brown v. Vail, et al*., No. CV-08-5091-JPH (E.D. Wash. 2009) (order on motion to dismiss); *Harris*

8  *v. Schriro*, 652 F. Supp.2d 1024, 1030 (D. Ariz. 2009).

9  In light of this precedent, the Court recommends that defendants' motion for summary

10  judgment on the issue of damages under RLUIPA be granted as to all defendants, except the

11  Department.

12  The Court recommends that the Departments' motion for summary judgment on the issue

13  of damages under RLUIPA be granted because plaintiff fails to show that his right to practice his

14  religion was substantially burdened. RLUIPA provides in relevant part:

15  No government shall impose a substantial burden on the religious exercise of a
   person residing in or confined to an institution . . . even if the burden results from
16  a rule of general applicability, unless the government demonstrates that
   imposition of the burden on that person–

17
   (1)      is in furtherance of a compelling governmental interest; and
18
   (2)      is the least restrictive means of furthering that compelling governmental
19           interest.

20  42 U.S.C. § 2000cc-1.

21  The term "religious exercise" includes "any exercise of religion, whether or not

22  compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  Under

23  RLUIPA, plaintiff "bears the initial burden of going forward with evidence to demonstrate a

24  prima facie claim" that the challenged action constitutes "a substantial burden on the exercise of

1  his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005), (*citing Cutter*

2  *v. Wilkinson*, 544 U.S. 709, 716-17 (2005)). To be considered a "substantial burden," the

3  challenged state action "must impose a significantly greater restriction or onus upon such

4  exercise." *Warsoldier*, 418 F.3d at 995.

5  The Department provided meals for inmates who wished to participate in Ramadan.

6  While plaintiff may not have been satisfied with the quality or quantity of the food provided, he

7  fails to show that the quality or quantity of the food that he was provided constituted a

8  "substantial burden" on his exercise of his religious beliefs. The most that can be said for

9  plaintiff's claim is that he was provided less than a fully nutritional meal on one occasion in

10  2010 because of the staff's mistakes in packing meals. This mistake was corrected and the next

11  year the Department implemented a system of providing a hot meal after sunset, further

12  accommodating plaintiff's nutritional needs at some considerable additional expense to the

13  Department. Therefore, whatever negligible burden there may have been on plaintiff's ability to

14  exercise his religious beliefs, this burden was not substantial.

15  B.      Injunctive relief under RLUIPA.

16  Plaintiff notes that in 2011, the Washington Department of Corrections returned to

17  providing Muslim inmates a hot meal after sundown during Ramadan (ECF No. 19, page 1).

18  Thus, plaintiff does not state a current case or controversy regarding injunctive relief. In order to

19  seek any form of injunctive relief, plaintiff must show a threat of irreparable injury that is real

20  and immediate, not conjectural or speculative. *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974).

21  Because the Department has returned to delivering a hot meal after sundown, there is no reason

22  to even consider whether there is a real and immediate threat of irreparable injury. Therefore, the

23

24

REPORT AND RECOMMENDATION - 7

1   Court recommends that defendants' motion for summary judgment be granted on plaintiff's

2   RLUIPA claims.

3   2.      First Amendment Freedom of Religion.

4       Defendants' argue:

5       In order to establish a First Amendment violation, Plaintiff "must show that
      [defendant] burdened the practice of [his] religion, by preventing [him] from
6       engaging in conduct mandated by [his] faith, without any justification reasonably
      related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735
7       (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) (footnote
      omitted)). "In order to reach the level of a constitutional violation, the interference
8       with one's practice of religion 'must be more than an inconvenience; the burden
      must be substantial and an interference with a tenet or belief that is central to
9       religious doctrine.'" *Freeman*, 125 F.3d at 737 (citing *Graham v. C.I.R.*, 822 F.2d
      844, 851 (9th Cir. 1987)). However, a prison officials' negligent or accidental
10      interference with an inmate's ability to exercise his religious beliefs does not state
      any claim actionable under § 1983. *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir.
11      2006).

12      The Ninth Circuit has articulated the proper test for determining if a First Amendment

13   claim applies to plaintiff:

14         To merit protection under the free exercise clause of the First
      Amendment, a religious claim must satisfy two criteria. "First, the claimant's
15      proffered belief must be sincerely held; the First Amendment does not extend
      to 'so-called religions which ... are obviously shams and absurdities and whose
16      members are patently devoid of religious sincerity.' " *Callahan v. Woods*, 658
      F.2d 679, 683 (9th Cir.1981) (quoting *Theriault v. Carlson*, 495 F.2d 390, 395
17      (5th Cir.), *cert. denied*, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974)).
      Second, "the claim must be rooted in religious belief, not in 'purely secular'
18      philosophical concerns." *Id*. (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215-16,
      92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972)); *Johnson v. Moore*, 948 F.2d 517,
19      520 (9th Cir.1991) (claims must be religious in nature). Determining whether a
      claim is "rooted in religious belief" requires analyzing whether the plaintiff's
20      claim is related to his sincerely held religious belief. *Callahan*, 658 F.2d at
      683-84.
21

22   *Malik v Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

23

24

1        Defendants do not contest the sincerity of plaintiff's beliefs or that his observance of

2   Ramadan is rooted in religious beliefs. Therefore, plaintiff's First Amendment rights are entitled

3   to protection.

4        Since plaintiff's First Amendment rights are entitled to protection, the Court must

5   determine whether defendants' actions were rationally related to valid penological goals. *See*,

6   *Turner v. Safley*, 482 U.S. 78, 89 (1987). "When a prison regulation impinges on inmates'

7   constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

8   interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Ward v. Walsh*, 1 F.3d 873, 876-77

9   (9th Cir.1993) (holding that *Turner* still applies to free exercise of religion claims of prisoners

10  after *Employment Division, Dep't of Human Resources v. Smith*, 494 U.S. 872 (1990)).

11       *Turner* sets forth four factors to be balanced in determining whether a prison regulation is

12  reasonably related to legitimate penological interests:

13       (1) Whether there is a valid, rational connection between the prison regulation and
    the legitimate governmental interest put forward to justify it;

14

15       (2) Whether there are alternative means of exercising the right that remain open to
    prison inmates;

16       (3) Whether accommodation of the asserted constitutional right will impact
    guards and other inmates, and on the allocation of prison resources generally; and

17

18       (4) Whether there is an absence of ready alternatives versus the existence of
    obvious, easy alternatives.

19  *Turner*, 482 U.S. at 89-90 (*quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

20       Defendants have asserted that there would be a cost savings in providing box meals

21  instead of a hot meal and sack lunches (ECF No. 17, Exhibits 1 and 2). Defendants also assert

22  that the cost savings is greater now that Ramadan is beginning in the summer months. This is a

23  legitimate governmental interest. Plaintiff contests these assertions and argues that meals can be

24

REPORT AND RECOMMENDATION - 9

1   prepared ahead and left in a warmer (ECF No. 19, page 1-3). While this may be an alternative,

2   this Court is not required to select the best alternative, but rather to determine if the alternative

3   defendants selected was based on a legitimate governmental interest.

4          The second prong of the analysis does not weigh in either side's favor. Plaintiff has the

5   ability to buy certain commissary items, but defendants are charged with the duty to provide

6   nutritionally adequate food. Further, plaintiff has the ability to observe Ramadan whether or not

7   he buys commissary items to eat. Plaintiff has not demonstrated that he did not have the ability to

8   receive nutritionally adequate food without going to the commissary. Therefore, this prong of the

9   analysis is of little value in this case.

10         The third and fourth prongs do not weigh heavily in favor of either side. If plaintiff is

11  accommodated with a hot meal, the cost savings of prison resources is lost, but either way,

12  plaintiff can observe the tenets of his religion. The Department has determined that a ready

13  alternative is available by providing the hot meal, which was implemented in 2011.  Therefore, it

14  appears that whatever weight should be given to plaintiff's right to receive a hot meal has now

15  been accommodated.

16         The Court concludes that defendants are entitled to dismissal of plaintiff's First

17  Amendment claim. Defendants provided nutritionally adequate food to inmates during Ramadan

18  of 2010, with the possible exception of the first day, when the Department was addressing its

19  error in providing boxed meals without sufficient nutrition. The Court recommends granting

20  defendants' motion for summary judgment.

21         3.       Eighth Amendment Claims.

22         Plaintiff must satisfy two requirements to state a claim of cruel and unusual punishment

23  under the Eighth Amendment. First, the deprivation alleged must be, "sufficiently serious."

24

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  For a claim based on a failure to prevent harm, the inmate must show incarceration under conditions posing a substantial risk of serious harm. *Id*.  Second, "[t]o violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind' … [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. (citations omitted).  The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

Plaintiff fails to show that the amount of food he received was inadequate. Therefore, he has not demonstrated that the reduction in food for one meal was "sufficiently serious" to violate the Eighth Amendment.  Even if the meals for the first day did not contain the proper number of calories, plaintiff fails to show injury. Nor does the prison officials' decision to provide box meals instead of a hot meal for the one season of Ramadan rise to the threshold level of an Eighth Amendment violation. In determining whether an inmate has been deprived of the minimal civilized measure of life's necessities, the Court may consider the time length of the deprivation. *Hutto v. Finney*, 437 U.S. 678, 685-87 (1978)). The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (*citing Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir.1977)). Since the Department has now attempted to accommodate those who observe Ramadan by providing a hot meal and since the box meal was nutritionally sufficient for all but one day in 2010, plaintiff has been unable to provide sufficient evidence to support a claim for violation of his Eighth Amendment rights.

The Court notes that Plaintiff's evidence of weight loss has been considered by the Court. In March 2010, plaintiff weighed two hundred and thirty three pounds (ECF No. 19, Appendix

B, pages 50 to 54). The Court will not guess how much weight plaintiff lost before Ramadan started. *Id*. On August 16, 2010, five days into Ramadan, plaintiff weighed two hundred and seventeen pounds. *Id*. On August 23, 2010 plaintiff weighed two hundred and eleven pounds. He complained and was under medical supervision. On August 30, 2010, plaintiff weighed two hundred and six pounds. *Id*. Plaintiff was under medical care for stomach pain and on September 3, 2010, a "G.I. cocktail" was prescribed (ECF No. 19, Appendix B page 53). Plaintiff fails to show that his weight loss was caused by lack of food from the box meals or that his weight loss did not begin prior to the start of Ramadan.

The Court has also considered plaintiff's allegations that a non defendant, Sergeant Teachout, confiscated food (ECF No. 19, page 14). The alleged conduct of this person does not impart liability to any named defendant. A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of a supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978). Thus, the theory of *respondeat superior* is not sufficient to state a claim under § 1983 against any of the named defendants. *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982).

Personal participation is connected to causation. The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Plaintiff must allege facts showing how each individual defendant caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A 42 U.S.C. § 1983 suit cannot be based on vicarious liability alone, but must allege that defendant's own conduct violated plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989). Plaintiff fails to allege any facts connecting

1  the actions of Sergeant Teachout with any named defendant. The Court recommends granting

2  defendants' motion for summary judgment on all Eighth Amendment claims.

3          4.       The Fourteenth Amendment and Equal Protection.

4          a.       Due process.

5          Defendants argue that there is no Fourteenth Amendment claim in this case (ECF No. 17,

6  page 18). The Court agrees given the facts of this case. The due process clause of the Fourteenth

7  Amendment provides that no person shall be deprived of life, liberty or property without due

8  process of law. In analyzing a procedural due process claim, a court first determines whether the

9  claimant has been deprived of a liberty or property interest protected by the Constitution; if so,

10 the court must determine whether the procedures attendant upon that deprivation were

11 constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989).

12         The Third Circuit has considered whether a prisoner has a liberty interest in receiving a

13 diet that complies with his religious beliefs and has held that there is not a liberty interest at

14 stake. That court stated:

15         Contant does not have a liberty interest in receiving a diet that complies with his
           religious beliefs. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701,
16         33 L.Ed.2d 548 (1972) (an individual has a due process interest in something
           where has "more than an abstract need or desire for it. He must have more than a
17         unilateral expectation of it. He must, instead, have a legitimate claim of
           entitlement to it"). *See also Rogers v. United States*, 696 F.Supp.2d 472, 500–01
18         (W.D.Pa.2010) (prisoners do not have a due process interest in religiously
           compliant meals). *See generally Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct.
19         2293, 132 L.Ed.2d 418 (1995) (explaining that, to establish a procedural due
           process claim based on the violation of a liberty interest, an inmate must show
20         that the actions of prison officials amounted to "atypical and significant hardship
           on the inmate in relation to the ordinary incidents of prison life"). In the absence
21         of such an interest, a plaintiff cannot sustain a due process claim. *See Board of
           Regents, supra*, 408 U.S. 564, 92 S.Ct. 2701 (absent a cognizable interest, no
22         process is required before deprivation).

23 *Contant v. Lowe*, 450 Fed. Appx, 187, 190 (3rd Cir. 2011).

24

1   Plaintiff does not maintain that food was taken away from him as a punishment or as a

2   sanction. Instead, plaintiff alleges that his right to receive an adequate amount of food was

3   violated.  A claim by a prison inmate that he is not being feed adequately is considered under the

4   Eighth Amendment, which prohibits cruel and unusual punishment. *Foster v. Runnels*, 554 F.3d

5   807, 812 (9th Cir. 2009). If plaintiff is a pretrial detainee, the Fourteenth Amendment applies

6   because pretrial detainees cannot be punished and the Eighth Amendment does not apply to

7   them. *See, Hamm v DeKalb County*, 774 F.2d 1567, 1571 – 1575 (11th Cir. 1985)(Discussing the

8   difference between a pretrial detainee and a prisoner and noting that the standard of care for both

9   is the same whether the Eighth Amendment or Fourteenth Amendment applies). Here, since

10   plaintiff is a prison inmate, no liberty interest is at stake and, instead, the claim should be

11   evaluated under the Eighth Amendment. The Court recommends granting defendants' summary

12   judgment on this portion of the due process claim.

13       b.       Equal protection.

14       Pursuant to 42 U.S.C. § 1983, an equal protection claim requires that defendants acted

15   with the intent to discriminate. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Mere

16   evidence of disparate impact on minorities, for instance, is insufficient. *Village of Arlington*

17   *Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977); *Washington v.*

18   *Davis*, 426 U.S. 229, 239-40 (1976).

19       The equal protection clause of the Fourteenth Amendment does not require conditions,

20   practices, and rules at county and state correctional facilities to be identical.  *Cooper v. Elrod*,

21   622 F. Supp. 373, 378 (N.D. Ill. 1985). The United States Supreme Court has observed that

22   "showing that different persons are treated differently is not enough without more, to show a

23   denial of Equal Protection." *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218,

24

REPORT AND RECOMMENDATION - 14

1  230 (1964). In addition, plaintiff must demonstrate that he was "treated differently [. . .] because

2  he belonged to a protected class." <u>Seltzer-Bey v. Delo</u>, 66 F.3d 961, 964 (8th Cir. 1995), (*citing*

3  *Divers v. Department of Corr.*, 921 F.2d 191, 193 (8th Cir. 1990)).

4      Here, the Department's decision to eliminate hot meals was based on a perceived cost

5  savings.  Further, the policy of providing only light refreshments and standard mainline meals at

6  festivals or gatherings, applies to all religious gatherings, not just plaintiff's class (ECF No. 20,

7  Exhibit 1 Attachment A).

8      Plaintiff has put forth no evidence to prove that defendants, or any of them, treated

9  plaintiff differently because of his religious beliefs or with an intent to discriminate.  Therefore,

10  plaintiff's equal protection argument is without merit. The Court recommends that defendants'

11  motion for summary judgment be granted on all Fourteenth Amendment claims.

12      5.      Lack of personal participation.

13      Defendants argue that defendants Vail and Fraker did not personally participate or play a

14  part in deciding what food items would go into the meal boxes. Although they did not actually

15  assemble the meals, defendant Vail was a high ranking prison official who put in place the

16  policies at issue. Defendant Vail, acting as secretary, signed policies relating to

17  "cultural/diversity and family center events" (ECF No. 17, page 41 of 55). Further, for injunctive

18  relief, defendant Fraker, as superintendent of the prison would have been a proper defendant.

19      These defendants are proper defendants because of their involvement in the changes to

20  policy that allowed for box meals, instead of a hot meal, and they would be proper defendants if

21  injunctive relief were available. The Court does not recommend dismissal based on this

22  argument.

23

24

1    6.    The Department of Corrections.

2    The Department is not a "person" within the meaning of 42 U.S.C. § 1983. *See Hale v.*

3    *Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993). Therefore, the Department is not potentially

4    liable for damages under this statute. While the Department may have been a proper defendant

5    for damages under RLUIPA, the Court has recommended dismissal of the RLUIPA claim. The

6    Court recommends granting defendants' motion for summary judgment as to the Department.

7    7.    Qualified immunity.

8    Defendants argue that they are entitled to qualified immunity from damages (ECF No.

9    17, pages 23-4). This immunity from suit may be available and may form an alternate ground for

10   granting defendants' motion for summary judgment. This Court has determined that no

11   constitutional violation occurred with the providing of meals to plaintiff during Ramadan of

12   2010. Therefore the Court does not address the question of immunity.

13   8.    The end of Ramadan feast.

14   Plaintiff originally appeared to be focusing on the fact that he was "deprived" of the "Eid

15   Ul Fitr" feast that marks the end of Ramadan (ECF No. 5, page 3). Defendants moved for

16   summary judgment, but did not adequately address this issue. In response to the motion, plaintiff

17   began to argue that he was deprived of traditional foods at the feast (ECF No. 19, page 6-7). The

18   Court requested additional briefing on this issue and the parties supplied it (ECF No. 22, 24, and

19   26).

20   In the additional briefing, defendants make it clear that it was the inmates, and not the

21   Department that postponed and then cancelled the feast (ECF No.22, page 3). Plaintiff responds

22   and argues that the feast was cancelled by the Muslims allegedly because the Department would

23   not serve "traditional foods" for the feast (ECF No 19, pages 7). Defendants replied and argue

24

1   that this issue was never presented in a grievance and must be dismissed under the Prison

2   Litigation Reform Act ("PLRA") pursuant to 42 U.S.C. § 1997e(a) (ECF No. 26, page 4-7).

3   Defendants also argue that because plaintiff would now be time barred in filing a prison

4   grievance the matter should be dismissed with prejudice (ECF No. 26, page 7).

5          The Court has reviewed the grievances at issue, which were attached to the original

6   complaint (ECF No. 5, Exhibit F). Plaintiff's grievance did not raise the issue of being able to

7   obtain "traditional food" for the feast (ECF No. 5, Exhibit F).

8          The PLRA requires plaintiff to exhaust whatever administrative remedies are available to

9   him prior to filing a complaint in federal court. The relevant portion of the Act states:

10         No action shall be brought with respect to prison conditions under section 1983 of
           this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
11         correctional facility until such administrative remedies as are available are
           exhausted.
12
     42 U.S.C. § 1997e(a).
13
14         Plaintiff filed this action while incarcerated and the Act applies to him. *See* 42 U.S.C.

15   §1997e(h). The statute defines "prisoner" to include any person confined in a facility for a

16   violation of criminal laws, including persons accused of or convicted of crimes.

17         Defendants argue that the issue must be dismissed with prejudice because plaintiff cannot

18   now go back and exhaust his remedies. This position is directly contrary to controlling Ninth

19   Circuit precedent. In the Ninth Circuit, a motion to dismiss for failure to exhaust administrative

20   remedies is an unenumerated 12(b) motion. *Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir. 2003).

21   Because the Ninth Circuit does not consider the motion as a summary judgment motion, a ruling

22   dismissing the claim for failure to exhaust administrative remedies is not a determination on the

23   merits. *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir. 2003). The Court recommends

24   dismissal of this claim, without prejudice.

REPORT AND RECOMMENDATION - 17

1    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3    6. Failure to file objections will result in a waiver of those objections for purposes of de novo

4    review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

5    imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

6    March 29, 2013, as noted in the caption.

7    Dated this 6th of March, 2013.

8

9

10   _____

11   J. Richard Creatura
     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 18